IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

PENNSYLVANIA INSURANCE COMPANY, a New Mexico Corporation, as the Subrogee of John Breslow and Sonia Breslow;

Plaintiff,

vs.

FEDERAL EXPRESS CORP., a Delaware Corporation;

Defendant.

**8:23CV274**

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Federal Express Corp.'s ("FedEx") Motion for Partial Summary Judgment. (Filing No. 25). A third-party paid FedEx to ship a watch to the purchaser, Sonia Breslow ("Sonia"). Sonia had third-party insurance from Plaintiff, Pennsylvania Insurance Company ("PIC"). PIC paid Sonia for the value of the lost watch, and then PIC, as subrogee, brought state-law claims against Defendant in the District Court for Douglas County, Nebraska. Defendant removed the matter to this court. (Filing No. 1.)

Defendant seeks dismissal of Plaintiff's state law claims for negligence, unjust enrichment and civil theft, alleging the claims are preempted by the Airline Deregulation Act. Defendant also seeks dismissal of the conversion claim. Defendant asserts Plaintiff may proceed with a breach of contract claim, but seeks a determination that Defendant's liability cannot exceed $100.00.

I. Background

A. The Shipment

A Jean Bugatti Tourbillon Chronograph Watch, Serial # 01/50 valued at $250,000.00 was created in Geneva, Switzerland at Jacob & Co. (Filing No. 1-1.) It was sent securely by private courier from Geneva to New York. *Id.* The purchaser, Sonia Breslow, planned for the watch to be initially delivered to the Iron Horse Golf Club in Whitefish, Montana, and then shipped to her in Scottsdale, Arizona. In doing so, Sonia would avoid sales taxes that would be imposed if the watch

was shipped directly to Arizona. (Filing No. 25-14.) The watch was intended to be a gift for her husband, John.

The watch was sent from New York using Malca-Amit USA, LLC's secured delivery service. Delivery of the watch was restricted to two assistants at the Iron Horse Golf Club. The shipment was in a yellow bag, secured at the top. It was received at Iron Horse on November 17, 2022. (Filing No. 1-1.) Sonia directed one of the assistants to tender the watch to FedEx for delivery to a UPS store in Scottsdale. An employee at Iron Horse repackaged one of the boxes in the shipment and created a shipping label using the Iron Horse FedEx Account Number. FedEx records show there was no value declared on the shipment.

FedEx accepted the shipment for delivery and the transportation cost was $127.69. (Filing No. 25-4.) The shipment contained two boxes and the two boxes were received at the FedEx facility in Scottsdale. FedEx security video shows that one box was pulled out of the yellow bag, FedEx employees attempted to scan the package without success then the package moved down the belt out of view of the camera. When Sonia opened the yellow bag that had been shipped by Iron Horse, there was only one box inside. (Filing No. 30-3.) The watch was not inside, and it has not been found. (Filing No. 1-1.)

Sonia made a claim against PIC under a Private Collection Insurance Policy she held with John, and she received a check for $250,000. (Filing No. 1-1.) PIC, acting in its capacity as subrogee to the purchasers, brought claims against FedEx for negligence (Count 1), conversion (Count 2), Unjust Enrichment (Count 3), Breach of Contract (Count 4), and Civil Theft (Count 5)[1]

B. Contract of Carriage

The contract of carriage between Defendant and the shipper consisted of a Pricing Agreement, the Terms and Conditions, and the provisions of the Service Guide incorporated by reference into the Agreement. (Filing No. 25-4.) Iron Horse entered into the Pricing Agreement with Defendant for shipping services on January 21, 2009 and the agreement was still in effect on

[1] Plaintiff's complaint identifies Civil Theft as "Count 6" but there is no Count 5 in the complaint, thus the court will address the civil theft claim as Count 5 for the sake of clarity.

the date of the shipment involved in this case. (Filing No. 25-4; Filing No. 25-7.) The Pricing Agreement states: "Each shipment made with FedEx is subject to the country of origin location's terms and conditions of carriage and the FedEx Service Guide in effect at the time of shipment…" (Filing No. 25-4; Filing No. 25-8.)

When labels are created, the user must click a button on the screen accepting the Terms of Use of the FedEx website and the FedEx Service Guide. (Filing No. 25-9.) There is a link on the screen to the Service Guide and the Terms and Conditions. (Filing No. 25-13.) The Service Guide contains a provision stating the "declared value of any package represents our maximum liability in connection with a shipment of that package, including, but not limited to, any loss, damage, delay, misdelivery, nondelivery, misinformation, any failure to provide information, or misdelivery of information relating to the shipment." (Filing No. 25-8.) The Terms and Conditions of the January 3, 2022 FedEx Service Guide states that with respect to "U.S. express package services, unless a higher value is declared and paid for, our liability for each package is limited to US$100." (Filing No. 25-8). Shipments containing jewelry or watches are limited to a maximum declared value of $1,000, and the maximum total value which can be declared for any package is $50,000. (Filing No. 25-8). The Service guide states that Defendant does "NOT PROVIDE INSURANCE COVERAGE OF ANY KIND" and "ANY EFFORT TO DECLARE A VALUE IN EXCESS OF THE MAXIMUMS ALLOWED IN THE FEDEX SERVICE GUIDE IS NULL AND VOID." (Id). (emphasis in original).

II. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, this Court views the facts in the light most favorable to the nonmoving party, however, that is true "only if there is a 'genuine' dispute as to those facts.' " *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 190 (2020) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

To be a material fact, the fact has to be one which "may 'affect the outcome of the suit.' " *Partridge v. City of Benton*, 70 F.4th 489, 491 (8th Cir. 2023) (quoting *Erickson v. Nationstar Mortg.*, LLC, 31 F.4th 1044, 1048 (8th Cir. 2022)). "A dispute over a fact is 'genuine' only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pitman Farms v. Kuehl Poultry, LLC*, 48 F.4th 866, 875 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

III. Analysis

Plaintiff's Complaint alleges claims for negligence, conversion, unjust enrichment, breach of contract, and civil theft. Defendant asserts the negligence, unjust enrichment, and civil theft claims must be dismissed as they are preempted by the Airline Deregulation Act of 1978. Defendant concedes the breach of contract and conversion claims may proceed under Federal common law, with limitations, as discussed in further detail below.

A. Preempted Claims

The Airline Deregulation Act (ADA or the Act) was enacted in 1978 to promote "efficiency, innovation, and low prices" in the airline industry. 49 U.S.C. § 40101(a)(12)(A). The Act was enacted after "determining that maximum reliance on competitive market forces would best further efficiency, innovation, and low prices as well as variety [and] quality...of air transportation services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (internal quotations omitted). To ensure that states cannot undo federal regulation, the ADA contains a preemption clause that prohibits a state from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." *See id.*; 49 U.S.C. § 41713. The parties do not dispute that Defendant is an air carrier subject to the ADA.

The preemption clause's causation requirement is broadly construed. See *Morales*, 504 U.S. at 383-84; *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995) (noting that Morales defined the predecessor to the ADA preemption clause's "related to" language as "having a connection with, or reference to," air carrier prices, routes, or services). That said, some claims may affect air

carrier pricing or service in a manner "too tenuous, remote, or peripheral" for preemption to apply. *Morales*, 504 U.S. at 390 (quoting *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 100 n.21 (1983)).

At issue is whether Plaintiff's common law claims are sufficiently "related to" a service of FedEx to merit ADA preemption. The majority of circuits has held the term "service" as used in the ADA refers to the "bargained-for or anticipated provision of labor from one party to another." See *Headstream Technologies, LLC v. FedEx Corporation*, 2023 WL 1434054 (6th Cir. 2023); *Hodges v. Delta Airlines, Inc*., 44 F.3d 334, 336 (5th Cir. 1995); see *Watson v. Air Methods Corp.*, 870 F.3d 812, 817-18 (8th Cir. 2017); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (per curiam) (collecting cases).

State common law claims "fall comfortably within the language of the ADA pre-emption provision." *Northwest, Inc. v. Ginsberg,* 572 U.S. 273 281 (2014). "Stripped of rhetorical flourishes," state common law claims about package handling and delivery procedures "plainly concern the contractual agreement between FedEx and the users of its services." *Tobin v. Fed. Exp. Corp.,* 775 F.3d 448, 454 (1st Cir. 2014). The activity at issue here was directly related to FedEx's services as an air carrier i.e. the mishandling of the package containing the watch.

In its brief, Plaintiff makes no specific argument regarding the unjust enrichment claim or the civil theft claim. Plaintiff does assert several ways in which Defendant was negligent. For example, Plaintiff argues that FedEx typically accepts shipments in boxes, while this shipment was sent in a secured bag or pouch containing two boxes. Thus, Plaintiff argues, FedEx should not have accepted the package and by doing so FedEx was negligent. Plaintiff also argues that FedEx did not properly handle or track the package. Plaintiff urges this court to find this case falls outside of the sweep of the ADA because the "tort liability for injuries caused by outrageous conduct" goes beyond the scope of normal aircraft operations. See *Rombom v. United Airlines, Inc.*, 867 F.Supp. 214, 222 (S.D.N.Y. 1994).

Upon review, *Rombom*, and other cases involving personal injury actions against an airline are distinguishable from the numerous cases involving claims for loss or damage to cargo. *Id., Cf. Blanco v. Fed. Express Corp.*, No. CIV-16-561-C, 2017 WL 3496458, at *2 (W.D. Okla. Aug. 15,

2017), aff'd in part, 741 F. App'x 587 (10th Cir. 2018); *Tobin v. Federal Express*, 775 F.3d 448 (1st Cir. 2014); *Cash Am. Pawn, L.P. v. Fed. Exp. Corp*., 109 F. Supp. 2d 513, 524 (N.D. Tex. 2000).

Plaintiff's state common law claims of negligence, unjust enrichment, and civil theft are preempted by federal law. Defendant's motion for summary judgment will be granted as to these claims. As will be discussed in more detail below, there are certain federal common law exceptions to ADA preemption which allow the conversion and breach of contract claims to proceed.

B. Breach of Contract

i. Breach of Contract Not Preempted by the ADA

Defendant states that Plaintiff may proceed with the breach of contract claim, i.e. that the claim is not preempted by the ADA. *See Am. Airlines v. Wolens,* 513 U.S. at 228-33 (holding "the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves.").

When a shipper contests the validity of a contractual clause that limits an air carrier's liability, federal common law is applied. *Kemper Ins. Companies v. Fed. Exp. Corp,* 252 F.3d 509, 512 (1st Cir. 2001) cert. denied 534 U.S. 1020 (2001). The liability of FedEx and other federally certificated air carriers for loss attendant to goods in transit is governed exclusively by federal law. *Arkwright-Boston Mfg. v. Great Western Airlines*, 767 F.2d 425 (8th Cir. 1985); *Sam L. Majors Jewelers v. ABX, Inc.,* 117 F.3d 922 (5th Cir. 1997); *Nippon Fire & Marine Ins. Co. v. Skyway Freight Systems,* 235 F.3d 53 (2nd Cir. 2000).

The ADA's preemption clause read together with the FAA's saving clause, "stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Id.* at 232. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement. So, while state law claims such as negligence and civil theft are preempted by the ADA, a plaintiff can

proceed against an air carrier with a breach of contract claim. See *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995).

ii. Released Value Doctrine

Plaintiff alleges that Defendant is liable in breach of contract for the full value of the missing watch. Plaintiff argues there is a genuine issue of material fact as to whether Sonia had notice of the terms of the contract of carriage and that the choice of liabilities and rates was presented to the shipper. In short, Plaintiff argues, "The contractual claim limiting FedEx's limits is not enforceable." (Filing No. 30.)

Citing the released value doctrine, it is Defendant's position that Plaintiff is limited in recovery to the amount provided in the contract of carriage because the shipper did not declare a value at the time of shipping. It states that the terms of the contract of carriage placed in issue expressly and unambiguously limit Defendant's liability to $100.00, entitling Defendant to summary judgment as to limited liability.

The Eighth Circuit has held that, under federal common law, "[a] common carrier may not exempt itself from liability for its negligence; however, a carrier may limit its liability." *Hampton by Hampton v. Fed. Exp. Corp.,* 917 F.2d 1119, 1121 (8th Cir. 1990), citing *Hopper Furs, Inc. v. Emery Air Freight Corp*., 749 F.2d 1261, 1264 (8th Cir.1984). This body of law, which has come to be known as the "released value doctrine" of federal common law, requires that in order to limit its liability "the carrier must present the shipper with a reasonable opportunity to declare a value for the shipment above the maximum value set by the carrier, pay an additional fee, and thereby be insured at a higher rate should the shipment go awry." *Hampton by Hampton v. Fed. Exp. Corp*., 917 F.2d at 1121; *See, also Kemper Ins. Companies, Inc. v. Fed. Exp. Corp.,* 115 F. Supp. 2d 116, 122 (D. Mass. 2000), *aff'd sub nom. Kemper Ins. Companies v. Fed. Exp. Corp.,* 252 F.3d 509 (1st Cir. 2001). It is not necessary that the carrier explain the option to declare a higher value to the shipper, rather, the carrier must provide only reasonable notice of the opportunity to declare a higher value. *Husman Const. Co. v. Purolator Courier Corp,* 832 F.3d 459 (8th Cir. 1987).

"When the facts of a case satisfy the released value doctrine, courts look to the contract language to determine the rights of the parties." *Kemper,* 115 F.Supp. 2d at 123. Iron Horse's employee, acting upon the direction of Sonia created and attached the shipping label using Defendant's website. During that process, the employee was presented with the opportunity to declare a value on the shipment in the "Package Details" section by checking a box. (Filing No. 25-4; Filing No. 25-9). There are options to purchase a higher limit of liability from FedEx, and there is an admonition that if no value is declared the maximum liability for the shipment is set in the Conditions of Carriage. Defendant's records show the shipper did not declare a value for the shipment. (Filing No. 25-4).

The final step before creating a shipping label required the shipper to click a button stating, "By clicking 'Finalize', I accept the Terms of Use of the FedEx website and the FedEx Service Guide." There were links to the relevant documents. The shipper was operating under the pricing agreement between Iron Horse and FedEx and confirmed receipt of the terms and conditions contained in the Service Guide, including the ability to declare a higher value and pay a higher fee for additional coverage. Therefore, the goals of the released value doctrine have been met and the terms in the contract of carriage limiting liability are controlling.

Numerous courts have found that a shipper in this situation, who did not declare a value for the shipments, are held to the limits specified in the contract of carriage on a claim for breach of contract. *See e.g. Headstream Technologies, LLC v. FedEx Corporation,* 2023 WL 1434054 at *5 (6th Cir. 2023); *Golden Hawk Metallurgical, Inc. v. Fed. Express Corp*., No. 15-14005, 2016 WL 5791198, at *4 (E.D. Mich. Oct. 4, 2016); *N. Cypress Med. Ctr. Operating Co. Ltd v. Fedex Corp.,* 892 F. Supp. 2d 861, 870 (S.D. Tex. 2012). In this case, where the shipper did not declare a value, the liability of the Defendant *to the shipper* would be limited to $100. (Filing No. 25-8.) *See Headstream* at * 5; *Kemper Ins. Companies v. Fed. Exp. Corp.,* 252 F.3d 509, 512-14 (1st Cir. 2001).

There is some question as to whether the released value doctrine applies in a suit brought by a plaintiff that is not a party to the contract of carriage. The Eighth Circuit took up this issue in *Hampton by Hampton v. Fed. Exp. Corp,* where the claims were brought by third parties who were

affected when items shipped were not delivered as anticipated. The court determined the plaintiff failed to cite any authority in support of the position that the released value doctrine did not apply to them. The same is true here, and the court has no reason not to apply the released value doctrine under these circumstances.

Plaintiff argues that Defendant must meet a burden of "producing prima facie evidence which demonstrates that it provided notice of a choice of liabilities and rates to the shipper," and it has not done so. (Filing No. 30). However, this argument is premised upon Defendant not providing notice to *Sonia*, but she was not the shipper – Iron Horse was.

In addition Defendant asserts, correctly, that it would have no reason to know that there was another party that would need to be consulted about the terms and conditions of the shipment. Iron Horse, as the shipper, and Defendant were party to the contract, but Sonia was not. Sonia, and PIC as subrogee, can only enforce the contract of carriage as a third-party beneficiary to the contract of carriage, and "third-party beneficiaries generally have no greater rights in a contract than does the promissee." *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 375 (1990). Thus, the limitation of liability applicable to Iron Horse applies to Sonia, and to PIC as subrogee as well.

It is worth noting that Plaintiff argues that if Sonia had the opportunity to, she "could have had the coverage for the Bugatti Watch placed on FedEx instead of PIC." (Filing No. 30.) However, this argument is disingenuous. Even if Sonia was the shipper, the limits of any potential liability under the Service Guide were well below the value of the watch, had a value been declared. And, regardless of whether the policy was purchased before or at the time of shipping, Sonia was clearly insured for the value of the watch and would have no reason to pay Defendant more to ship the watch at a higher declared value. *See Kemper Ins. Companies v. Fed. Exp. Corp.*, 252 F.3d 509, 513 (1st Cir. 2001). (finding the fact that third-party insurance was available and was purchased by the shipper counsels against invaliding the limitation on liability, particularly where the plaintiff is not the shipper, but the subrogated third-party insurer of the package.).

C. Conversion

In some cases, courts have discussed a "conversion exception" in the context of applicability of limited liability provisions. *Blanco v. Fed. Express Corp.*, No. CIV-16-561-C, 2017 WL 3496458, at *3 (W.D. Okla. Aug. 15, 2017), aff'd in part, 741 F. App'x 587 (10th Cir. 2018); *See, e.g. Glickfield v. Howard Van Lines, Inc.,* 213 F.2d 723, 727-728 (9th Cir. 1954); *Kemper Ins. Companies v. Fed. Exp. Corp..,* 252 F.3d 509, 512 (1st Cir. 2001). It is against public policy to permit a carrier to limit its liability and thus to profit from its own misconduct. So, where a carrier has intentionally converted for its own purposes the property of the shipper, traditional true conversion claims may proceed and limitations on liability are then considered inapplicable. However, there must be some proof that *the carrier* appropriated the property. See, e.g., *Glickfeld*, 213 F.2d at 727 (requiring proof that the carrier has appropriated the property for its own use or gain, rather than the simple fact that the property has gone missing); *Nippon Fire & Marine Ins. Co. v. Holmes Transp. Inc.*, 616 F.Supp. 610 (S.D.N.Y.1985) (same). The carrier may properly limit its liability where the conversion is by third parties or even by its own employees." *Glickfeld v. Howard Van Lines, Inc.*, 213 F.2d 723, 727 (9th Cir. 1954)

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof. *Celotex Corp v. Catrett*, 477 U.S. 317 (1986). If the movant points to the absence of evidence supporting the nonmovant with respect to such an issue, the nonmovant, in order to avoid an adverse summary judgment on that issue, must produce sufficient summary judgment evidence to sustain a finding on that issue. *Id; see, also, Anderson v. Liberty Lobby Inc.,* 477 U.S. 242 (1986). The nonmoving party must "substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." *Putnam v. Unity Health System,* 348 F.3d 732 (8th Cir. 2003).

Here, Defendant asserts there is no evidence to support Plaintiff's conversion claim. (Filing No. 25-1.) In response, Plaintiff asserts facts showing that the shipment was opened and/or repackaged by a FedEx employee, and that this occurred outside of the view of FedEx's video monitors. Plaintiff also offers Sonia's deposition testimony speculating that the watch is "Either

in a box or somebody's arm." (Filing 30-3 at p. 39). Plaintiff argues that Sonia never received the watch, therefore there is a genuine issue of material fact as to whether Defendant appropriated the watch for its own use or gain. However, there is no evidence presented that true conversion by Defendant has occurred. And, there can be no genuine dispute of material fact as to this issue because there are no facts at all indicating what actually happened to the watch.

Plaintiff argues that summary judgment is inappropriate because "FedEx has offered no evidence nor could it because it does not know the current location of the Bugatti Watch." (Filing No. 30.) However, this argument actually supports Defendant's position; if Defendant does not know the location of the watch, there cannot be a finding that Defendant intentionally converted the watch for its own purposes. Defendant's motion for summary judgment will be granted as to Plaintiff's conversion claim.

Accordingly,

IT IS ORDERED:

1. Defendant's Motion for Partial Summary Judgment is granted. (Filing No. 25.)

2. Counts 1, 2, 3, and 5 of Plaintiff's complaint are dismissed.

3. Defendant's liability on Plaintiff's breach of contract claim (Count 4) is limited to $100.

Dated this 30th day of August, 2024.

BY THE COURT:

Susan M. Bazis
Susan M. Bazis
United States District Judge